[Civ. No. 3938. Third Appellate District.—May 24, 1930.]

JOHN RAFFO, Appellant, v. E. P. FOLTZ et al., Respondents.

A. H. Carpenter for Appellant.

McNoble, Parkinson & Coblentz for Respondents.

TUTTLE, J., *pro tem.*—Action brought to recover the sum of $1500 from defendants Foltz and Smallpage, which sum, it is alleged, defendants refused to pay over when an execution was levied.

December 21, 1926, an agreement was entered into by Charles N. Newman and Celia Newman, his wife. This was a separation agreement. Paragraph 17 of this agreement provided as follows:

"17. And whereas, certain creditors who have claims for merchandise purchased by said second party on and after the aforesaid date now demand payment from said first party; second party agrees that she will hold first party harmless from the payment of any and all of said claims, or of any damage resulting unto plaintiff therefrom, and that she will, within sixty days from the date hereof, either pay and discharge all of said indebtedness and claims, or furnish unto said first party, documents evidencing his release therefrom. As security for the faithful performance of this covenant on the part of second party, the latter agrees that there may be deposited in the Stockton Morris Plan Bank, evidenced by a certificate of deposit thereof, drawing six per cent per annum interest, in the joint names of E. P. Foltz,

attorney for said second party, and Lafayette J. Smallpage, attorney for first party, the sum of Fifteen Hundred ($1500.00) Dollars. No charge shall be made by the said Lafayette J. Smallpage and/or E. P. Foltz for any services rendered or to be rendered her in connection with said escrow. In the event that all of said obligations are paid and discharged as herein agreed, and first party is held harmless from any loss or damage resulting from any of said claims hereby assumed and agreed to be paid by said second party, including costs of suit and a reasonable allowance for attorney fees that may be incurred by him after this date in defending his liability upon any of said claims, or in enforcing any of his claims against second party on account of her covenants herein, then the aforesaid moneys shall be paid unto the second party not later than six months from the date hereof, unless otherwise mutually agreed upon between the aforesaid E. P. Foltz and Lafayette J. Smallpage, provided, however, that prior to the termination of said six months' period, if any judgment of any trial court be rendered against first party by reason of any alleged liability of his upon any of said claims, then said E. P. Foltz and Lafayette J. Smallpage shall deduct from the said moneys so on deposit, the amount of such judgment and pay the same in discharge thereof, and provided further, that in case, prior to the termination of the six months' period, an action be pending against said first party upon any of said indebtedness or claims, a sufficient amount shall be withheld by the said E. P. Foltz and Lafayette J. Smallpage, to cover the amount so claimed, together with costs and reasonable counsel fees, which said amount shall be paid by them in the discharge of any judgment that may be rendered in said action against said first party.''

January 13, 1927, John Raffo, appellant herein, commenced suit against Celia Newman, through his attorney, A. H. Carpenter, praying for a judgment in the sum of fifteen hundred ($1500) dollars costs and interests (such amount by coincidence being the same amount as the fund above set forth), upon an alleged cause of action on a promissory note signed by Celia Newman, the consideration of which was alleged to be money loaned by Raffo to her. On that date attachment was issued in the action and served with notice of garnishment on defendants Foltz and Small-

page. Smallpage at that time held in his possession three five hundred (500) dollar investment certificates in Stockton Morris Plan Company in which he had invested the fifteen hundred ($1500) dollars. He refused to surrender these certificates to the sheriff and retained possession of them until they were deposited in court under order of court later. Following Raffo's attachment, Powers, Ross and other creditors of Celia Newman likewise brought suit and garnished Foltz and Smallpage.

March 14, 1927, appellant served execution and notice of garnishment on Foltz and Smallpage, Celia Newman having suffered default. Smallpage again refused to surrender the certificates. June 27, 1927, Celia Newman, through her attorney, A. H. Carpenter, filed petition in voluntary bankruptcy, was shortly thereafter adjudicated and R. H. Dodd was appointed trustee of her estate and at all times thereafter was the qualified and acting trustee. May 9, 1927, appellant brought this action against Foltz and Smallpage to compel application of investment certificates to satisfaction of judgment against Celia Newman, basing his complaint upon his attachment and subsequent execution. August 4, 1927, Foltz and Smallpage deposited the certificates in court to await the outcome of the litigation. Thereafter R. H. Dodd as trustee in bankruptcy of estate of Celia Newman, Powers, Ross and various others, filed petitions in intervention. Answers, cross-complaints, etc., were filed freely, the pleadings being somewhat voluminous, but in none of them were any issues raised controverting the foregoing statement of facts which appear fully alleged in the pleadings.

When the garnishment was served by appellant, suits were pending against C. N. Newman and Celia Newman for merchandise bought by Celia Newman after September 18, 1925, to the amount of eleven hundred ($1100) dollars, plus interest and costs. At the same time there were other unpaid merchandise claims against the Newmans for goods bought after September 18, 1925, which, added to the amounts in suit, give a total of over fifteen hundred ($1500) dollars at the time of attachment herein. At the time of judgment herein merchandise bills of above character, plus costs of the trustees to a total of fourteen hundred thirty-five ($1435) dollars, remained unpaid and subject to payment from the fund from which the investment certificates were derived.

The foregoing facts are a compilation of the totals shown by the various exhibits introduced by defendant and interveners, to the introduction of which appellant stipulated that no objection would be raised as to the form, or upon the ground that in such form they were not the best evidence, appellant objecting solely upon the ground of their materiality.

The record further shows that when said property settlement was executed, Charles N. Newman paid over to his wife the sum of $6,000 cash, and that the wife thereupon paid over to defendants Foltz and Smallpage the said sum of $1500 mentioned in said agreement.

The purpose of the foregoing clause in said contract was not, as counsel seem to infer, to protect the creditors of the parties, or either of the parties. It was formulated for the benefit of the husband, as security for the faithful performance of certain covenants of the agreement and not out of solicitude for creditors.

Defendants contended that said sum was not subject to attachment or execution at the hands of plaintiff in this action. The trial court so found and adjudged.

The judgment of the trial court was predicated and based upon the theory that the said personal property was a trust fund, and as such could not be reached by attachment or execution, and that the purported levies were void.

Appellant contends that the said separation agreement did not create a trust, and that said sum of $1500 should be applied in satisfaction of his judgment.

A trust may be defined as any arrangement which exists where property is transferred with an intention that it be held and administered by the transferee or trustee for the benefit of another. (*Estate of Reith*, 144 Cal. 318 [77 Pac. 942].) Property held under a trust is not subject to garnishment or attachment. (28 C. J. 102.)

It will be observed that said sum of $1500 was merely deposited with the two attorneys, as security for the performance of certain acts on the part of the wife. There was no transfer of the ownership of this fund. It belonged to and was the property of the wife at all times. We are of the opinion that under the contract the relations of the parties were as follows: The wife was the pledgor; the husband the pledgee, and the attorneys pledge-holders, and that

the transaction may be designated as a pledge. ▮ Pledge is a deposit of personal property by way of security for the performance of another act. (Civ. Code, sec. 2986.) A pledgor and pledgee may agree upon a third person with whom to deposit the property pledged, who, if he accepts the deposit, is called a pledge-holder. (Civ. Code, sec. 2993.) ▮ A pledge has sometimes been spoken of as in the nature of a trust, but strictly it has not the characteristics of a trust and is particularly distinguishable therefrom in that in the case of an assignment in trust the title to the property passes, whereas, in the case of a pledge, it does not. (49 C. J. 898.) "A transfer of personal property to trustees, as security for a debt, under an agreement that said trustees are to conduct the business of the grantors, through one of the latter as their agent, for six months, when, if found unprofitable, they are to sell the goods, and providing that, when certain creditors shall have received fifty per cent of their claims, and all costs and expenses, then the trust shall be terminated, and the assets remaining shall be transferred to the said grantors, is a pledge. . . . " (*Lilienthal* v. *Ballou*, 125 Cal. 183 [57 Pac. 897] ; 7 Kerr's Digest, p. 7447.)

It has been held in this state that property held as a pledge is subject to attachment, and in this connection the Supreme Court has said:

"It is contended for respondent, however, that the Byrne note in possession of the bank as a pledge was not subject to attachment, and that only the money realized therefrom by the bank was attachable; and, therefore, that Carter acquired no lien on the money collected by the bank after the service of the garnishment; and this theory seems to have been adopted by the judge who heard the motion and made the order.

"But this theory is unsound. All debts and credits of a defendant in possession of another are attachable by garnishment. The Byrne note, in possession of the bank as collateral security for a debt of the defendant in attachment (Richardson-Kimball Co.) was a 'credit,' and the defendant's interest in it was attachable by garnishment of the bank (*Gow* v. *Marshall*, 90 Cal. 565 [27 Pac. 422]), and the lien of Carter's attachment not only fastened itself upon the note, but transferred itself to the money when collected

thereon by the garnishee. (*Robinson* v. *Tevis*, 38 Cal. 614].)'' (*Deering & Co.* v. *Richardson-Kimball Co.,* 109 Cal. 74 [41 Pac. 801, 803].)

 As the property held by Foltz and Smallpage was a pledge, we hold that it was subject to garnishment and execution. The lien of the garnishment and execution would fasten itself upon the personal property in question and any balance remaining, after the pledge-holders had fully performed the acts required of them under the contract, should be delivered to the sheriff under the levy of the execution herein. (*Deering & Co.* v. *Richardson-Kimball Co., supra.*)

It follows that the finding of the court ''that the levies of the garnishment and execution are void and of no effect and constitute no lien upon said personal property'' is not supported by the evidence, and the judgment based upon the same is erroneous.

The judgment is reversed.

Finch, P. J., and Plummer, J., concurred.

A petition for rehearing of this cause was denied by the District Court of Appeal on June 23, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 21, 1930.