[Civ. No. 2073. Fourth Appellate District.—July 15, 1938.]

THE STATE LIFE INSURANCE COMPANY (a Corporation), Appellant, v. S. P. WILLIAMS, as Administrator, etc., et al., Respondents.

Hulme, Hastings & Bartlett for Appellant.

Harry W. Horton for Respondents.

HAINES, J., *pro tem.*—During or about the year 1917 one Mary L. MacCarthy and one J. H. Kaiser entered into a verbal understanding whereby the two were to jointly buy from the Southern Pacific Land Company the property located in Imperial County, California, known as the North half (N½) of tract 139, Township 13 South, Range 12 East S. B. M. Kaiser appears to have furnished his half of the funds with which the property was purchased and also further funds from time to time to meet costs of leveling the land and various carrying charges. Kaiser, however, was a resident of New York and the said Mary L. MacCarthy took title to the property in her own name, executing to Kaiser two writings under date February 12, 1919, and March 25,

1920, respectively, acknowledging his ownership of a half interest in the land. Neither of these writings was recorded.

On April 1, 1925, being, so far as the public records show, the exclusive owner of the property, the said Mary L. MacCarthy executed to Thorne-Hill Investment Company her note for $3,200 payable on April 1, 1930, with interest at 6 per cent per annum, payable semiannually, and to secure the same executed to the Security First National Bank of Los Angeles as trustee, and to said Thorne-Hill Investment Company as beneficiary, a deed of trust affecting the most easterly 80 acres of said land. On January 22, 1926, being still, so far as the public records showed, the sole owner of the property, she executed to the same payee another note for $2,000 payable on February 1, 1931, with interest at 6 per cent per annum, payable semiannually, and, to secure that, executed to the Pacific Southwest Trust & Savings Bank, since absorbed in the Security First National Bank of Los Angeles, as trustee, and to said Thorne-Hill Investment Company as beneficiary, a further trust deed affecting 80 acres of said land adjacent on the west to that affected by the first trust deed. Both of these notes were subsequently assigned before their due date to plaintiff and appellant, The State Life Insurance Company. Mary L. MacCarthy sold and conveyed, apparently without Kaiser's knowledge or consent, the west half of the whole property purchased, leaving, as we take it, standing in her name only the two encumbered parcels above referred to.

In March, 1930, the said Mary L. MacCarthy died, and, her will having been admitted to probate in Imperial County, defendant and respondent, Esther L. Doolittle, was appointed and qualified as executrix thereof. Thereafter, having first filed a claim against the MacCarthy estate which was rejected, Kaiser, on June 23, 1930, brought an action in the Superior Court of Imperial County against the said Esther L. Doolittle, as executrix of that estate, to obtain a judgment establishing in his favor a trust as to a half interest in the whole of the property so jointly bought, and for an accounting.

On July 10, 1931, the Superior Court of Imperial County made, in the matter of the MacCarthy estate, an order "that any and all rentals and income from the following described real property be paid into court and impounded pending the determination of the claims of J. H. Kaiser in and to said

real property'' (followed by a description of the whole property as originally bought). An order in the same terms was at the same time made in the action between Kaiser and the MacCarthy estate.

Neither of the promissory notes above referred to was paid at maturity nor was any interest on either of them paid after the principal of the respective notes matured, nor were any taxes paid on the property described in the deeds of trust subsequent to those of the fiscal year 1930–1931, and there also remained unpaid assessments of the Imperial Irrigation District for various years. Foreclosures were had under the respective deeds of trust resulting in sales thereunder in January, 1935, and the property in each instance sold for the exact amount of the principal only on the note secured, leaving as of January 8, 1935, on account of costs of sale, trustee's fees and expenses and accrued interest an unpaid balance due plaintiff (appellant) of $947.12 on account of the larger note and $590.70 on account of the smaller one.

The property had been under lease to a firm known as Jack Brothers and McBurney and said Esther L. Doolittle, as executrix of the MacCarthy estate, found it necessary to appeal to the court sitting in probate for leave to reduce the rentals. Thereupon, with the written consent of counsel for Kaiser, the court made on September 6, 1932, an order permitting the executrix to consent to such reduction of rentals and proceeding further as follows:

''It is further ordered that said rental which is to be paid for the year commencing August 1, 1932, eight hundred dollars ($800.00) of which is to be paid forthwith and the balance of eighteen hundred dollars ($1,800.00) payable February 1, 1933, are each and both to be paid into Court herein to be used and applied in payment of past due and delinquent taxes upon said leased premises, and the balance thereof to be used and applied in paying past due and current interest on an existing lien upon said premises, and any additional thereof to be used to protect and satisfy an existing lien upon said premises in favor of the present lien holder holding trust deed or mortgage upon said premises.''

On September 10, 1932, that is some four days after this order was made, the attorney for the said lessees, Jack Brothers and McBurney, without, so far as appears, any authority to represent anyone else, wrote one Tompkins, who was

the mortgage loan collection agent of the plaintiff (appellant), advising him of the making of this order, quoting the part of the same above set out and adding the following:

"You will see from the order that you are protected in the matter.

"The $800.00 has been paid into Court and I think it might be well for you to take up with the attorney for the executrix the matter of paying taxes and also interest if it is due you. I do not know how much the delinquent taxes amount to but, of course, the payment of taxes will inure to your benefit as much as it will to the estate. There will be a larger payment made on the 1st of February.

"Do not quote me in this matter to the executrix. I am giving you this information so that you can take whatever action you desire regarding the disposition of the money which will be paid into the Court for you should, undoubtedly, receive a considerable portion of it.

"My client desires the fullest protection in this matter and if anything should arise which might affect their rights I will appreciate your notifying me. We have done everything we could to cooperate with you."

Tompkins' testimony is to the effect that he advised the plaintiff (appellant) of the existence of this order and that he would look at it the next time that he was in the valley; that he did so; that the clerk handed him a file and showed him the order and also advised him of the amount paid in under it; and that thereafter, in reliance on the order, plaintiff (appellant) took no further action toward making collections on the note until August, 1934, when the proceedings were commenced that resulted, as above stated, in the completion of the foreclosure upon the deeds of trust in January, 1935.

There were actually impounded and deposited in the county treasury of Imperial County under the court order referred to $799.20 rentals on October 1, 1932, and the further sum of $1798.18 on June 30, 1933.

Kaiser's action against the MacCarthy estate resulted in a judgment entered on September 20, 1933, establishing the trust contended for, decreeing that by reason of the alienation by the decedent, Mary L. MacCarthy, of the westerly half of the tract bought, Kaiser was entitled to the whole of the remainder, that is the property encumbered by the deeds of

trust, and further that Kaiser was entitled to all of the said collections impounded in the county treasury. Thereupon the court made a separate *ex parte* order directing that the respondent Garey, as county auditor, draw his warrant on the respondent Varney, as county treasurer, in favor of Kaiser's attorney for the whole of the impounded sum aggregating $2,597.38.

Thereafter appellant filed the present action claiming that the said monies constituted a trust fund of which it is the beneficiary and seeking judgment requiring payment of the same to it. During the pendency of this latter action Kaiser died and defendant (respondent), S. P. Williams, is now the administrator of the estate and has been substituted as such. The trial court denied the relief asked by the plaintiff (appellant) and the present appeal followed.

Appellant's contentions are (a) that the orders of the superior court sitting in probate directing the impounding of the rentals from the property and their application upon the payment of taxes and the interest on the obligations held by it, coupled with its delay in faith thereof in instituting any foreclosures, resulted in an irrevocable trust enforceable by it; and, (b) that the circumstance that counsel for Kaiser consented to the making of said order of September 6, 1932, and allowed it to be made a public record estops Kaiser and all persons interested in his estate from questioning its sufficiency as against them. Respondents, on the other hand, question the fact of appellant's reliance on the order referred to; question appellant's right, as a matter of law, to rely on the order; and claim that the arrangements for the impounding of the rentals were merely transactions had between Kaiser and the MacCarthy estate for conserving their respective interests as between themselves until the litigation could, as between them, be determined, and that such impounding was a matter with which appellant had no concern.

The first inquiry, when a court order is involved, must necessarily have to do with the authority for making it. Superior courts, indeed, have both probate and equity jurisdiction, and, where necessary to do justice to all parties the probate courts may, in aid of their functions as such, exercise equitable powers. (*Estate of Barreiro,* 125 Cal. App. 752, 764 [14 Pac. (2d) 786], and cases cited.) The order here involved, however, is no part of any statutory proceed-

ing in probate, such, for example, as a decree of distribution would be; nor is it, on the other hand, a judgment determining any controversy, rendered in response to pleadings by adverse parties. It is, therefore, so far as the court is concerned, a mere administrative direction given to the executrix as the court's officer, with respect to her conduct of certain details pertaining to the duties of her office. We know of no authority vested in the court, by virtue of its probate jurisdiction, or of any equitable powers ancillary to its probate jurisdiction, to create, by such an order, any irrevocable trust. Certainly it had no authority by any such order to bind Kaiser, whose interests were adverse to the MacCarthy estate, to any further or greater extent than he might consent to be bound. ▉ It seems to us, then, that any force or effect that can be asserted for the order of September 6, 1932, so far as appellant is concerned, must rest not primarily on the circumstance that the court made it, but on some claim that the executrix of the MacCarthy estate on the one hand and Kaiser on the other consented to it. The only evidence in the record that Kaiser did so consent is the circumstance that the attorney who was representing him in his action against the MacCarthy estate appended his written consent to the order. The record fails, however, to disclose any power of attorney from Kaiser that could serve to authorize such consent on his behalf, nor does it disclose any other authority to his lawyer to act for him than the law itself implies from the circumstance that his lawyer was at the time engaged in conducting Kaiser's litigation against the MacCarthy estate and was presumably authorized to do so and to make collection for Kaiser of any funds that an accounting to be had in such litigation might show to be due to Kaiser. While such authority might authorize such lawyer to enter into reasonable stipulations with his opponents for the conservation of assets in controversy until the litigation between Kaiser and the MacCarthy estate could be concluded, it would be stretching it considerably to construe it as authorizing such lawyer to create an irrevocable trust in favor of appellant.

Having in mind then, these limitations upon the court's power in the matter, and, so far as appears from the record, upon the powers of the lawyer representing Kaiser, we have next to consider what the court by the order in question and

Kaiser's attorney by undertaking to consent to it, can be believed to have intended or attempted to do.

Our attention in that connection is, on appellant's behalf, directed to various sections of the Civil Code and also to the language from *Raffo* v. *Foltz,* 106 Cal. App. 51 [288 Pac. 884], to the effect that:

"A trust may be defined as any arrangement which exists where property is transferred with an intention that it be held and administered by the transferee or trustee for the benefit of another."

Section 2221 provides that:

"Subject to the provisions of section eight hundred and fifty-two, a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty:

"1. An intention on the part of the trustor to create a trust, and,

"2. The subject, purpose and beneficiary of the trust."

Section 2251 declares that:

"The mutual consent of a trustor and trustee creates a trust of which the beneficiary may take advantage at any time prior to its rescission."

Reference has also been made to section 1559 of the Civil Code to the effect that:

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

As illustrative of the sort of an instrument that will be considered as creating a trust in favor of one who is not formally a party to it we are referred to *Tyler* v. *Mayre,* 95 Cal. 160 [27 Pac. 160, 30 Pac. 196], *National Bank of California* v. *Exchange Nat. Bank,* 186 Cal. 172 [199 Pac. 1], and *Sherwood & Sherwood* v. *Gill & Lutz,* 36 Cal. App. 707 [173 Pac. 171].

*Tyler* v. *Mayre, supra,* involved a situation wherein one Jane E. Chase had brought an action through one Tyler, as her attorney, for judgment on a certain note payable to her. Pending the action she assigned the note and cause of action besides various additional claims held by her to one Irvine as trustee, by a written assignment whereby Irvine was directed to collect the various claims so assigned by her to him and with the proceeds to see certain persons who had

become bondsmen for the said Jane E. Chase on her official bond as administratrix of the estate of one M. S. Chase, and their successors as such bondsmen, indemnified against liability on the bond "first deducting and paying out of any moneys that may be realized out of said claims all charges for costs and attorney's fees and charges, to provide for the payment of which this assignment and transfer is also made". Tyler proceeded to reduce to judgment the obligation that he had been employed by the said Jane E. Chase to enforce and then sued the administrator of Irvine, who had meanwhile died, to recover his attorney's fee out of the trust fund. In the opinion of Commissioner Vanclief, adopted by the majority of the court it is (pp. 167, 168) said:

"That one of the purposes of the trust was to pay the plaintiff and other attorneys of Chase their proper fees and charges for services and expenditures in the actions in which they were employed is expressed with sufficient certainty in the instrument itself. . . .

"The trust in this case devolved upon the administrator of Irvine (Perry on Trusts, secs. 143, 144), and the facts stated in the complaint constitute an equitable cause of action directly against Irvine's administrator. The mutual consent of a trustor and trustee creates a trust of which the beneficiary may take advantage at any time prior to rescission. (Civ. Code, sec. 2251; *Bettis* v. *Townsend,* 61 Cal. 333.) And even though the relation between Chase and Irvine should be held not to be that of trustor and trustee, the agreement between Chase and Irvine, upon a sufficient executed consideration, that the latter should pay plaintiff for his services to Chase, may be enforced by plaintiff directly against Irvine in an action at law."

In *National Bank of California* v. *Exchange Nat. Bank, supra,* where a contractor had assigned and delivered to a bank his warrant and assessment for public work with written instructions authorizing the bank to collect the amounts due and to receive and sell the unpaid assessments, and directing the payment from the amounts collected of a promissory note of which the contractor was a guarantor, it was held by the Supreme Court that a trust was created in favor of the holder of the note. It was, *inter alia,* held that the trust was not subject to revocation by the contractor. In that connection the court said:

"Section 1559 of the Civil Code, providing that a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it, has no application to this case where a trust has been created in favor of such third person. Such trust is governed by the provisions of the code with reference to trusts."

This expression we take to have been made in answer to the contention in that case that the trust involved had been revoked, and to be understood with reference to that contention. The law on that subject has now, as respects voluntary trusts been changed by the amendment of 1931 to section 2280 of the Civil Code, which now reads:

"Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate. Trusts created prior to the date when this act shall become a law shall not be affected thereby."

In *Sherwood & Sherwood* v. *Gill & Lutz, supra,* it was held that where on sale of a business the purchasers agreed with the vendor to pay all indebtedness of the latter contracted in or about the business, creditors of the latter might, under section 1559 of the Civil Code, sue on the agreement as upon a new contract made in their favor and that the statute of limitations began to run from the date of the new contract rather than from the time respective items of indebtedness were contracted by the vendor.

After a consideration of the statutory provisions involved as well as the authorities to which counsel have directed our attention we cannot bring ourselves to feel that the order under discussion was ever intended to have the effect contended for by appellant. Undoubtedly it was couched in very broad language, and after providing first for payment from the impounded rentals of the delinquent taxes on the property affected and past due and current interest "on an existing lien upon said premises", it goes on to provide that any additional funds available shall "be used to protect and satisfy an existing lien upon said premises in favor of the present lienholder holding trust deed or mortgage upon said premises". It may be conceded that this language is quite as strong as that used, for example, in the instrument in-

volved in *Tyler* v. *Mayre, supra.* In so far, however, as Kaiser was concerned, unlike Jane E. Chase, the trustor in *Tyler* v. *Mayre, supra,* he was under no moral obligation whatever to make any arrangement for the protection of the supposed beneficiary, in this case the appellant.

It is not claimed that the order was made as a result of any negotiations by anybody with appellant. It undoubtedly evidences the opinion of the respective attorneys for Kaiser and the executrix of the MacCarthy estate, entertained in September, 1932, when it was made, that it would be to the interest of those litigants to have the money already ordered by the court to be impounded, applied to preserve the equities in the land rather than to allow it to be idle pending their litigation with each other, which if done would incidentally protect the interests of appellant as trust deed holder. We think that the circumstances indicate that to have been the only purpose of this new order. We see, in those circumstances, no reason to attribute to counsel for Kaiser or to the court any initial intention by this order, however broad its language, to invest appellant with any new right or to create any trust in its favor or to make any arrangement with respect to these impounded funds which might not be changed at any time before it were carried out. Neither do we see that so far as the record shows, any authority existed in the court to create or in Kaiser's counsel to consent to any such trust to operate *in futuro.* *Touli* v. *Santa Cruz County Title Co.*, 20 Cal. App. (2d) 495 [67 Pac. (2d) 404], relied on by appellant does not appear to us to cast any light on the present situation. What is here involved is not an attempt to repudiate the MacCarthy deeds of trust, but to question whether a new trust resulted from the court's order.

 It seems clear to us, then, that appellant can have no claim to these impounded moneys unless it be upon some theory of estoppel *in pais,* operating against Kaiser and his estate. We have then to examine the situation from that point of view. The trial court has in that connection very distinctly found that appellant did not refrain from foreclosing in reliance upon the order in question. This finding is attacked as unsupported by the evidence, consisting on that subject largely of statements contained in Tompkins' testimony, which for their part respondents attack, as in various

respects unlikely. It is not altogether a question, however, of whether appellant did rely on this order, but there is also involved the question of whether appellant had any right to rely on it. This question we are constrained to answer in the negative. Appellant's attention was never called to the court order of September, 1932, by anyone connected either with Kaiser or the MacCarthy estate, nor yet at the instance of the court. The information came initially from a third party, the attorney for the tenant, and the letter containing the information specifically suggested to Tompkins as appellant's agent that he take up the question of having the taxes and interest paid in pursuance of the order with the attorney for the estate. The evidence fails to disclose that he ever did anything of the sort. He says that the next time he visited the Imperial valley he looked at the order. If he looked at it with any care he must have seen the appended consent of Kaiser's attorney. He says that he looked at no other papers in the estate. He made no attempt whatever to further investigate the condition of the estate and claims never to have heard of the Kaiser litigation until after it had been decided and he ultimately heard of it through a title company. In the circumstances any contention that he or appellant were misled to their detriment by any conduct of Kaiser or anybody representing Kaiser seems to us very tenuous. The trial court may readily have believed that if appellant or Tompkins, its agent, in fact placed any reliance on the order they would have sought to compel the immediate application of the rentals to the purposes indicated in the order instead of ignoring the situation until after the Kaiser litigation had been decided. Nothing said or done in behalf either of Kaiser or the MacCarthy estate could in any way have prevented the appellant's foreclosure of its deed of trust at any time after the first default in the obligations thereby secured had appellant desired to take that course, nor is it even claimed that Kaiser or any representative of the MacCarthy estate made any representation to appellant to dissuade it from such action. In the circumstances we cannot say that the trial court's finding that appellant did not refrain from foreclosure in reliance on the court's order is not justified, nor that the situation warrants any claim as against the Kaiser estate of any estoppel nor yet that appellant has as against that estate any equities.

■ It is doubtless true that so much of the finding numbered XI as undertakes to state an agreement subsequent to the order of September 6, 1932, between counsel for Kaiser and counsel for the MacCarthy estate that application should not be made of the impounded moneys as provided in that order, is based on an offer of testimony excluded by the court and that such finding ought not, therefore, to have been made. The finding on this subject, however, appears to us to have been unnecessary to the decision. It may, therefore, be disregarded. It is certainly clear from the court's order for the payment of the funds in question to counsel for Kaiser that the latter, whether he be said to have revoked or repudiated the arrangement for the application of the impounded rentals, did in fact claim them for himself.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 12, 1938.