[Civ. No. 8182. First Appellate District, Division One.—March 25, 1932.]

GEORGE N. VAN ORDEN, Chairman of the Rehabilitation Committee, etc., Plaintiff and Respondent, v. HILDA M. ANDERSON et al., Defendants and Respondents; GOLDEN WEST CREDIT AND ADJUSTMENT CO. (a Corporation), Intervener and Appellant; AMERICAN BISCUIT COMPANY (a Corporation), Defendant and Appellant.

Jesse A. Mueller for Appellants.

Hugh K. McKevitt, Holloway Jones, A. V. Dalrymple, W. J. Cullinan and Robert E. Hatch for Respondents.

THE COURT.—This action involves two appeals from the judgment entered in a suit in interpleader, one taken by the intervener and the other by one of the defendants to the original action.

The Jenny Wren Stores, Inc., was a Delaware corporation operating chain stores in California. In 1927 a bill in equity for the appointment of a receiver of the business was filed in the federal court, and this was followed by a petition to have the corporation adjudicated an involuntary bankrupt. Thereafter certain of its creditors, for the purpose of protecting their interests, appointed a committee (which will be hereinafter referred to as the creditors' committee). At about the same time the stockholders also selected a committee, called the rehabilitation committee, of which the plaintiff in the present action was made chairman. The latter committee undertook to procure sufficient additional capital from the stockholders and others to discharge the company's indebtedness in order that it might continue in business. It secured subscriptions from certain of the stockholders, part being paid in cash, but it failed to procure sufficient to pay the debts of the corporation, and a new committee, consisting of A. V. Dalrymple, an attorney who was not a stockholder, and stockholders E. A. Keller and L. D. Courtermarsh, were appointed. This committee (which will be hereinafter referred to as the Dalrymple committee) procured subscriptions from a number of the stockholders,

who also paid sums on account thereof. The subscription agreements procured by the rehabilitation committee provided, "All checks are to be made payable to a trustee to be appointed by this committee, and it is further understood by all parties that any and all moneys received are to be returned and all notes canceled in the event this committee should not receive subscriptions in an amount not less than $125,000.00." That the payments by these subscribers were made to plaintiff is not denied.

The subscription agreements procured by the Dalrymple committee constituted its members special attorneys-in-fact of the subscribers, with authority to enter into contracts to effect the purposes expressed in the agreement, namely, the purchase of the stores and assets of the company, and contained the provision that "such funds as are not applied to the purposes herein set out shall be returned to the undersigned within a reasonable time thereafter, less only such actual expenses as have been incurred as expenses, postage, professional and clerical services and incidentals. The total of such deductions shall not exceed ten (10%) per cent of the amount herein subscribed, which deduction I hereby expressly authorize to be made.

"Subscriptions and payments made previously for reorganization or rehabilitation of the aforesaid corporation are hereby altered and amended to conform to the conditions hereof, and the custodian of such funds is hereby authorized. and directed to deliver the same to my attorneys in fact for the purposes set out herein."

While the stockholders were endeavoring to carry out the above plans the assets of the company were on January 5, 1928, sold in the bankruptcy proceeding to the Mutual Stores, Inc., for $280,000. The rehabilitation committee had in the meantime incurred liability for certain expenses in connection with their efforts, and were consequently unable to return to the subscribers in full the amounts paid on account of their subscriptions. Some of the expense claimants had brought suit against plaintiff, and the Dalrymple committee also sued to recover the amounts paid to plaintiff by stockholders who had also signed the subscription agreement with the latter committee. Plaintiff had in his hands something over $10,000, and being faced with the above claims filed the present action, in which those subscribers who had

paid sums to the rehabilitation committee (therein called defendants subscribers), and individuals and corporations (called in the complaint defendants creditors) to whom the committee had incurred liabilities for expenses, were joined. Several of these subscribers had also signed subscription agreements with the Dalrymple committee.

The complaint, which was filed on March 17, 1928, contained the allegations usual in interpleader actions, and prayed that all the defendants be restrained from commencing or prosecuting actions against the plaintiff to recover their claims; that they be required to interplead, and upon his payment of the remainder of the fund into court he be discharged from all liability in relation thereto, and recover his costs with attorney's fees. A restraining order issued, and this was followed by a temporary injunction restraining the defendants named in the complaint as prayed.

Certain of the defendants subscribers answered the complaint, asserting their respective claims to the fund, as did also certain of the defendants creditors, who asserted claims for supplies, etc.; and on May 2, 1928, respondent Dalrymple filed in the action a complaint in intervention, claiming from the said defendants subscribers who had also signed subscription agreements with the Dalrymple committee the sum of $1208.04, which sum it was alleged had been necessarily expended for professional services by the committee and liability for the repayment of which the said subscribers incurred under their agreement. It appears that there were about 1280 stockholders in the company.

On May 10, 1928, the Golden West Credit and Adjustment Co., a corporation (which will be hereinafter referred to as the Adjustment Company), as assignee of certain creditors of the Jenny Wren Stores, Inc., filed two actions to recover from the stockholders on their liability as such. One action upon the claims of 219 creditors, aggregating about $200,000, was filed in the superior court against 170 of the stockholders; and another in the justice's court upon claims against approximately 1100 stockholders.

On May 17, 1928, writs of attachment issued in said actions were levied upon the funds alleged to be in the hands of plaintiff Van Orden and belonging to the subscribing stockholders joined as defendants in the present suit in interpleader.

On March 26, 1929, by leave of the court the Adjustment Company filed in the present action its verified complaint in intervention, alleging the commencement of the two actions mentioned, the issuance and levy of the writs of attachment upon the interest of said defendants stockholders, and that by virtue thereof it had an interest in the funds superior to such defendants subscribers, and asked judgment accordingly. On April 17, 1929, it filed a supplemental complaint in intervention, alleging that since the filing of its original pleading judgments had been entered against certain of the defendants mentioned.

On April 19, 1929, there was filed by respondent Dalrymple, on behalf of stockholders named as defendants to the complaint of the Adjustment Company, an answer alleging that said funds were held by plaintiff as a trustee, and that the same were in the custody of the court at the time the attachments were levied, and that for either reason were not subject thereto; further, that the bankruptcy proceedings were instituted by 219 of the creditors mentioned in the complaint as assignors of the Adjustment Company, whose claims the latter acquired for collection only; that at a meeting of the creditors, which included said assignors, a committee was appointed with power to act for the creditors in calling for and receiving bids, or otherwise adjusting the affairs and business of the company; that at a joint meeting between the creditors' committee and the stockholders, including those named as defendants in the Adjustment Company's complaint, it was agreed to call for bids, and that all bids received should be submitted to the referee in bankruptcy; that before action should be taken on such bids the stockholders would be given an opportunity to raise the funds necessary to pay the company's indebtedness, and that no bid should be rejected prior to the sale in the event the stockholders failed to raise sufficient funds to pay the same. That in December, 1927, W. J. Espinolda presented to the creditors, including said defendants, a *bona fide* bid of $400,000 for the assets and goodwill of the corporation, payment of the same to be secured by a mortgage on said assets and goodwill and the assets of the bidder; that the bid was in excess of the debts of the corporation, but was rejected by the creditors without reason and without submitting the same to the referee in

bankruptcy; that as a consequence the assets of the corporation were sold for $280,000, causing a loss to the stockholders of $120,000. Further, that the creditors made the above promises with the intent to mislead the stockholders and for the sole purpose of inducing them to place funds in the hands of the plaintiff so that the same might be attached, and that the stockholders were misled thereby and would not otherwise have subscribed as aforesaid.

The trial court found that plaintiff, by virtue of the agreements between the stockholders mentioned and the rehabilitation committee, became a trustee of the fund, which he continued to hold as such until May 2, 1928, when as the result of said injunction proceedings the same came under the control and into the custody of the court, where it has since remained. It also found in accordance with the allegations contained in the answer filed by the stockholders to the complaint in intervention and the Adjustment Company, and concluded that the latter had no interest in the fund and that its attachments and executions should be set aside.

It was adjudged that plaintiff be awarded the sum of $500 attorney's fees; that attorney Dalrymple recover the sum of $1208.04, the said defendants creditors the sum of $430.27, and that the Adjustment Company take nothing by its complaint in intervention. No orders with reference to the disposition of the fund were made, and no decree discharging plaintiff from liability was entered previous to the entry of the above judgment, which provided that plaintiff be relieved from all liability in connection therewith.

It appears without dispute that the fund is on deposit in the Wells Fargo Bank and Union Trust Company of San Francisco in the name of plaintiff; and the court in its judgment required the bank to pay the same to Martin F. Thane, whom the court appointed a special referee in the matter. The referee was directed by the judgment to distribute the fund in accordance therewith and to make his report to the court, and for these services he was allowed the sum of $500 payable from the fund.

The American Biscuit Company, a corporation, was one of the subscribing stockholders, and paid into the fund the sum of $262.50. The stockholders so contributing were allowed the several sums so paid less the above amounts

awarded plaintiff, the defendants creditors, respondent Dalrymple and the referee appointed by the court. The corporation last named together with the Adjustment Company have appealed from the judgment.

■ To warrant the filing of a complaint in intervention the intervener's interest must concern the matter in litigation and be of such a character that he will either gain or lose by the direct operation of the judgment (20 Cal. Jur., Parties, sec. 25, p. 520) ; but it is sufficient if it be created by a claim to or a lien upon the property or some part thereof which is the subject of litigation (*Horn* v. *Volcano Water Co.*, 13 Cal. 62 [73 Am. Dec. 569]; *Kimball* v. *Richardson-Kimball Co.*, 111 Cal. 387 [43 Pac. 1111]; *McEldowney* v. *Madden*, 124 Cal. 108 [56 Pac. 783]). As was said in *Israel* v. *Bryan*, 52 Cal. App. 66, 75 [197 Pac. 121, 125], "the proceeding in interpleader is a proceeding in equity, and all persons having any right or interest to protect may properly be made parties to such proceeding."

■ The present case presents the questions of plaintiff's right to a discharge from liability both as a trustee and as a garnishee, together with the rights of numerous claimants to the fund, all of which the intervener as a creditor of the stockholders was interested in contesting, and the facts made a proper case within the above rules for an intervention by the Adjustment Company.

First to be considered are the questions of the effect of the attachments and executions levied by the Adjustment Company, the findings that the defendants were fraudulently induced to deposit funds with the plaintiff that the same might be attached, and that the creditors failed to carry out their alleged agreement to submit all bids received by them to the referee in bankruptcy, which findings appellants claim are unsupported.

■ In proceedings of this character the right of the plaintiff in interpleader should first be determined, and if the right is sustained an interlocutory decree should be entered requiring the defendants to interplead and litigate their claims to the fund *inter se* (*San Francisco Sav. Union* v. *Long*, 123 Cal. 107 [55 Pac. 708]), and upon the payment of the money into court pursuant to this order and upon his discharge the plaintiff ceases to be a party to the action.

(*Woodmen of the World* v. *Rutledge,* 133 Cal. 640 [65 Pac. 1105].)

It is the rule that property in the custody of the law is not subject to garnishment or execution except by statutory authority (13 Cal. Jur., Garnishment, sec. 5, p. 5; 15 Cal. Jur., Levy and Seizure, sec. 20, p. 1011); but in order to constitute *custodia legis* the property must have been lawfully taken pursuant to legal authority (28 Cor. Jur., Garnishment, p. 67). Thus money paid voluntarily into court without an order therefor, or in the mistaken expectation that a motion for an interpleader would be granted, is not in the custody of the law. (*Kimball* v. *Richardson-Kimball Co., supra; Colver* v. *W. B. Scarborough Co.,* 73 Cal. App. 455 [238 Pac. 1110]; *Oddo* v. *Smith,* (Sup.) 183 N. Y. Supp. 4; 33 Cor. Jur., Interpleader, p. 467.) In the present case no interlocutory decree was entered; and, as stated, no order was made previous to the final judgment with reference to the fund except the preliminary restraining order and the temporary injunction mentioned. These orders made no disposition thereof, nor did they direct the plaintiff to do so, but merely restrained the defendants named in the complaint from commencing or prosecuting any actions against the plaintiff for the return thereof. The court found that on April 2, 1928, the date when the temporary injunction issued, the fund was by an order placed in its custody; but the admitted fact is that the same was then and at all times since has remained on deposit in the bank mentioned in the name of the plaintiff. While a deposit in bank to the order of the clerk of the court and receipted for by the county treasurer has been held to place the fund in the court's custody (*Agoure* v. *Peck,* 17 Cal. App. 759 [121 Pac. 706]), here no change in the status of the deposit was made by order or otherwise; and we are constrained to hold that previous to the final judgment nothing was done in the proceeding which rendered the fund immune from garnishment process by the assignors of the Adjustment Company.

Respondents contend, however, that plaintiff was a trustee of the fund, and that this is a reason for holding that the same was not subject to garnishment.

While a plaintiff by garnishment acquires no better right against the garnishee than the defendant would have (*Marble Co.* v. *Merchants' Nat. Bank,* 15 Cal. App. 347 [115

Pac. 59]), and property held under a trust is not as a general rule subject to garnishment or attachment (*Ward* v. *Waterman,* 85 Cal. 488 [24 Pac. 930]; *Raffo* v. *Foltz,* 106 Cal. App. 51 [288 Pac. 884]), nevertheless where the purposes of the trust have been accomplished, or the trust otherwise terminated (which was clearly the situation here), the surplus or balance remaining in the hands of the trustee can be so reached by a creditor of the beneficiary of the trust. (*Parker* v. *Parker,* 69 Vt. 352 [37 Atl. 1112]; *Green & Button Co.* v. *Remington,* 72 Wis. 648 [39 N. W. 767, 40 N. W. 643]; *Stetina* v. *Bergstein,* 204 Mo. App. 366 [221 S. W. 420]; *Baker* v. *Bundy,* 55 Ind. App. 272 [103 N. E. 668]; *Handley* v. *Pfister,* 39 Cal. 283 [2 Am. Rep. 449]; *Steineck* v. *Hass-Baruch Co.,* 106 Cal. App. 288 [288 Pac. 1104].) Nor will a contingency as to the amount prevent a valid levy provided the defendant's interest is capable of certain and definite ascertainment (28 Cor. Jur., Garnishment, sec. 133, p. 103), nor that the amount of the surplus requires the adjustment of a claim for compensation by the trustee. (*Snyder* v. *Parmalee,* 80 Vt. 496 [68 Atl. 649].) ██ However, garnishees will only be held for debts owing at the time of the service of the writ (*Nordstrom* v. *Corona City Water Co.,* 155 Cal. 206 [132 Am. St. Rep. 81, 100 Pac. 242]), and property and credits which have been transferred or assigned by the defendant cannot subsequently be subjected to garnishment as belonging to him. (28 Cor. Jur., Garnishment, sec. 138, p. 104.) The same rule applies to equitable assignments (*Walling* v. *Miller,* 15 Cal. 38; *McIntyre* v. *Hauser,* 131 Cal. 11 [63 Pac. 69]); and it has been held that the rule is not changed by the fact that the garnishment was levied before notice of the assignment was given the debtor. (3 Cal. Jur., Assignments, sec. 36, p. 285.)

██ As stated, certain stockholders who had signed subscription agreements with the rehabilitation committee also signed contracts with the Dalrymple committee. The contracts last signed expressly referred to the previous agreements and provided that ". . . the custodian of such funds is hereby authorized and directed to deliver the same to my said attorneys in fact for the purposes set out herein." The plaintiff was the custodian of the funds paid to the rehabilitation committee, and the language clearly

indicates an intention to transfer the same to the Dalrymple committee. In order to constitute an equitable assignment no express words to that effect are necessary, but it is sufficient if from the entire transaction it appears that the intention of the parties was to pass title and that payment should be made to the one who becomes the equitable assignee. (*McIntyre* v. *Hauser, supra; Goldman* v. *Murray,* 164 Cal. 419 [129 Pac. 462]; *Title Ins. & Trust Co.* v. *Williamson,* 18 Cal. App. 324 [123 Pac. 245, 247]; *Puterbaugh* v. *McCray,* 25 Cal. App. 469 [144 Pac. 149]; *Los Angeles City School Dist.* v. *Tucker,* 99 Cal. App. 390 [278 Pac. 507].) The levies were subsequent to these transactions, and the claim of Dalrymple was by reason of the assignments prior to that of the Adjustment Company.

■ With reference to the evidence upon which the findings to which appellants except were based, it was testified by the witness Courtermarsh that at a meeting between the stockholders' and the creditors' committees it was agreed that the stockholders should endeavor to raise funds to rehabilitate the corporation, and that the committee was told to call for bids; that on a later date bids were submitted to the referee in bankruptcy by the Dalrymple committee and by the Mutual Stores Company, Inc. This witness failed to testify that to his own knowledge any other bid was received by the stockholders, the creditors or the referee; but he was asked if he was present at a hearing before the referee when the above bids were offered. His reply being in the affirmative a record certified by the official reporter of the referee, purporting to contain the testimony of one Schwartz given on that occasion, was read by the witness, who testified that he heard Schwartz so testify. The admission of this record and the testimony of Schwartz was objected to by the Adjustment Company on the ground that the record was not competent and the testimony hearsay. Schwartz testified in substance that W. J. Espinolda had submitted to the creditors a bid of $400,000 for the assets of the business, which bid they rejected. It was also testified by the witness Thorpe, a stockholder, that she was present at the meeting between the stockholders and the creditors' committee at which the latter was directed to call for bids to be submitted to the referee. She was then asked the following question, to

which she replied in the affirmative: "If they received a bid of $400,000.00 and they rejected the bid without submitting it to the referee, then it would be contrary to their agreement that evening?"

This is all the evidence on the above issues. It is apparent that neither Courtermarsh nor Thorpe knew of their own knowledge of any bids other than those submitted to the referee, and the record contains no evidence supporting the allegations that the creditors fraudulently induced the stockholders to deposit any sums with the plaintiff in order that the same might be attached. Moreover, while the answer of the stockholders alleged that the creditors' committee had full power to act for the creditors in calling for and receiving bids, or otherwise adjusting the affairs of the company, and that this committee in entering into the alleged agreement with the stockholders was acting on behalf of the creditors, there is no evidence of any authority given the committee by the creditors, the two witnesses mentioned (and theirs is the only testimony on the question) stating merely that at a meeting between the stockholders' and the creditors' committee, the latter were told to call for bids and that those bids were to be submitted to the referee. As to the Schwartz testimony, assuming that the proceedings before the referee and the present action were between the same parties there was no attempt made to bring this witness within the provisions of subdivision 8 of section 1870 of the Code of Civil Procedure. Furthermore, his testimony fails to disclose except by surmise that he was a member of the creditors' committee, or if so, that he was authorized as such or otherwise to bind the creditors by his statements or admissions. For the above reasons there was no competent evidence sufficient to support findings of fraud or the existence or violation of the alleged agreement by the creditors.

The Adjustment Company also attacks the award made to Dalrymple, and both appellants object to the allowance of attorneys' fees to plaintiff and the compensation allowed the special referee.

It is clear that the Dalrymple committee acquired an interest in the funds of the assignors held by plaintiff, which interest was superior to the claims of the Adjustment Company. The trial court named in its findings those who

contributed to the fund in plaintiff's possession and the amounts of such contributions. It appears therefrom that two of those who signed contracts with the Dalrymple committee had no interest in the fund. These are Joseph Mishke and Cussei Eckstein (sometimes known as Gussie Ekstein), from whom respondent Dalrymple claims a total of $327.61, and which amount was included in the award. Moreover, the record discloses no evidence of such interest, and the claims of respondent Dalrymple against these persons were consequently not payable from the fund, nor may litigation be maintained in actions of this character upon claims other than those relating to the fund or the right held by the stakeholder (33 Cor. Jur., Interpleader, sec. 48, p. 459).

 As respects the compensation of the referee, section 639 of the Code of Civil Procedure provides for the appointment by the court of its own motion of a referee when the taking of an account is necessary for the information of the court before judgment, or for carrying a judgment or order into effect; and we cannot say that such appointment was or will be unnecessary for the latter purpose in the present case. Section 1028 of the same code, however, provides that the fees of referees are five dollars for every day spent in the business of the reference; and the allowance of a sum in advance without regard to the time necessary to carry the judgment into effect was erroneous.

 Although as a general rule interpleader is not one of the actions where attorneys' fees may properly be allowed (*Los Angeles Trust & Savings Bank* v. *Ward,* 197 Cal. 103 [239 Pac. 847]), it is clear that plaintiff was the trustee of an express trust within the meaning of sections 2250 and 2273 of the Civil Code, and as such became involved in considerable litigation over the fund previous to the filing of the present action. Such facts would warrant an allowance for legal expenses incurred on this account as provided by the section last mentioned (*Los Angeles Trust & Savings Bank* v. *Ward, supra*), and we cannot say that the amount awarded was unreasonable.

 Appellants further claim that the fund was never placed in the custody of the court, and that the judgment discharging plaintiff was consequently improper. As they point out, no order directing the plaintiff, in whose name the

fund is on deposit, to pay the same into court has yet been made otherwise than by directing in the judgment that the bank (which is not a party to the action) pay the fund to the referee. Proper practice requires that before a plaintiff in an interpleader suit is discharged from liability the fund be placed in the court's custody (*Interlocking Stone Co.* v. *Scribner,* 19 Cal. App. 344 [126 Pac. 178]; 14 Cal. Jur., Interpleader, sec. 33, pp. 450, 541).

The court entered judgment in favor of fourteen of the defendant creditors joined in plaintiff's complaint for a total of $430.27. The judgment recited that these creditors appeared in the action and offered evidence in support of their claims. The record shows, however, and the fact is not disputed, that only two of the creditors whose alleged claims were allowed appeared, namely, Eagles Hall Association, Inc., and V. Wallace, a total of $60; and the allowance of the others was unsupported by evidence, and hence erroneous. Each appellant was interested in resisting these claims, and the amount involved precludes the application of the *de minimis* rule (2 Cal. Jur., Appeal and Error, sec. 600, p. 1009).

Other points are made by appellant which do not require discussion.

For the reasons stated the judgment as to respondents Eagles Hall Association, Inc. (referred to in the judgment as Eagles' Hall), and V. Wallace is affirmed; the award to respondent Dalrymple is modified by deducting therefrom the sum of $327.61, and as so modified is affirmed; the judgment as to the other respondents named and referred to therein is reversed and the cause remanded for further proceedings in accordance with the views above expressed.

It is further ordered that as between appellants and respondent Dalrymple each bear his own costs on appeal.