[Civ. No. 4113.   Fourth Dist.   Nov. 2, 1950.]

LEO H. DAWSON, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION etc., Respondent.

Novack & Haberkorn for Appellant.

Samuel B. Stewart, Jr., Hugo A. Steinmeyer and Robert H. Fabian for Respondent.

BARNARD, P. J.—The plaintiff brought an action for debt against his former wife, Kay Dawson. A writ of attachment was issued and served, with a proper notice, upon the defendant bank on December 23, 1946, seeking to attach or garnish all debts owed by the bank to the former wife. The bank answered that it was not then indebted to Mrs. Dawson in any amount. In September, 1947, the plaintiff recovered a judgment in that action, which remains unsatisfied to the amount of $1,284.95. Thereafter, he brought this action to recover that amount from the bank. The court found in favor of the defendant finding, among other things, that it was not indebted to Mrs. Dawson in any amount on December 23, 1946, and that it is not true that the bank at that time had in its possession the sum of $1,800 or any other sum for the use or benefit of Mrs. Dawson. The plaintiff has appealed from the judgment.

On November 6, 1946, an escrow was opened with the bank through which one Grove was selling a house to one Wallace. Grove was buying the house from one Demas under a contract executed in September, 1944. On November 14, 1944, Grove had borrowed $1,000 from Mr. Dawson, giving a note therefor. At the same time two contracts were executed under which Dawson was given a lease on the house; he agreed to pay certain taxes, insurance and other bills; and it was agreed that he should be substituted as purchaser under the Demas contract in the event Grove's indebtedness to him was not paid by November 15, 1946. On July 2, 1946, Dawson assigned his interest in these instruments to Mrs. Dawson.

When the escrow was opened on November 6, 1946, Wallace deposited the purchase price and the escrow instructions

provided, among other things, that the escrow holder should pay $1,000, plus interest, to Mr. Dawson, "for assignment of lease now held by him." On the same day the bank sent the escrow instructions to Grove, who was in Oklahoma, for his signature, and also wrote to Mr. Dawson who was in Texas. On November 13, the bank sent a telegram to Mr. Dawson telling him the money was there to pay his demand under the terms of the agreement of November 14, 1944, "to be approved by Grove, personally" and asking him to forward the agreement for cancellation when the demand was paid. On November 14, the bank received a telegram from Dawson in reply to its letter of November 6, saying "Sum involved approximately $1,800. Make no release pending detailed statement from me. Litigation possible." Also on November 14, the bank got a telegram from Grove saying he had received the escrow instructions, which were satisfactory; that he would sign and return them; and then saying "Please pay out of escrow the claim of Mr. and Mrs. Leo Dawson lessees today if possible as per agreement with them in our contract due November 15, 1946." On the same day, November 14, Wallace amended his escrow instructions by directing the bank to pay the claim of Mr. Dawson and his wife "which demand is to be approved by Harry Grove. This demand is to be paid at once, regardless of completion of this escrow, when such demand has been deposited by (Mr. Dawson) and has been approved by (Grove)." Grove signed and returned the original instructions sent him by the bank.

On November 18, the bank got a letter from Mr. Dawson stating the amount he claimed. Shortly thereafter, Mrs. Dawson told the bank that her ex-husband had assigned his claim to her. On November 27 the bank wrote to Mrs. Dawson that it was holding funds for the payment of such a demand when it was approved by Grove, and when the note and agreement were placed in the escrow for cancellation. On November 30 the bank received notice from Mr. Dawson that he had turned the matter of settling his claim over to his attorney. On November 30, the bank wrote to Grove telling him that it was in a position to record the deed to Wallace as soon as it received from "Dawson and wife, a mutual demand, with your approval thereof"; that they had received a demand from Mr. Dawson but he did not surrender his copy of the agreement with Grove; that Mrs. Dawson claimed to hold an assignment of this agreement but had failed to deposit a demand with the necessary documents; and that they would be in a

position to close the transaction with Wallace "if you will instruct us as to the amount which you owe Col. Leo H. Dawson and wife, and authorize us to hold the amount in escrow until the matter between you and Col. Dawson and wife has been settled."

On December 4 Mrs. Dawson called at the bank, submitted some figures as to her demand and showed the original contracts and the assignment to her, but refused to leave the documents or to sign anything. On December 16, the bank received a letter from Grove authorizing it to close the sale of the house to Wallace, and to withhold $2,000 to settle the claim of Dawson and his wife, the balance to be paid to him, and then saying: "I am to give final approval as to the amount claimed by the Dawsons."

On December 21, 1946, the bank recorded a deed to Wallace and held back $2,000 to be used in accordance with Grove's instructions. On December 23, 1946, the attachment here in question was levied, and a return made that the bank owed nothing to Mrs. Dawson at that time.

On December 28, 1946, the bank wrote to both Mr. and Mrs. Dawson saying the real estate portion of the escrow had been closed, that it was holding funds for the payment of their demands, subject to approval of Grove, and asking them to deposit the necessary documents for surrender and cancellation upon payment. Nothing was done by Mr. Dawson, but on January 2, 1947, Mrs. Dawson put in her demand, deposited the necessary instruments with the note and assignments, and signed the necessary releases. On January 7, 1947, Grove approved the amount of her claim and signed the necessary instructions, and the money was then paid to Mrs. Dawson, the balance being sent to Grove.

The appellant contends that, under this evidence, the court erred in holding that the bank did not owe any debt to Mrs. Dawson on December 23, 1946, and did not at that time have in its possession any credits or personal property belonging to her. It is argued that the bank knew that the claim of Mr. Dawson had been assigned to Mrs. Dawson; that the bank had been instructed by Grove to withhold the sum of $2,000 to settle the claim of Dawson and his wife; that Wallace, as the buyer, amended his instructions on November 14, 1946, by instructing the bank to pay the claim of the Dawsons, when it was deposited by Dawson and approved by Grove, regardless of the completion of this escrow; and that from and after that date the bank was holding the sum of $2,000 as a credit belonging to Mrs. Dawson.

Wallace's amended instruction of November 14 was expressly qualified by stating that the Dawson demand was to be paid when it was "deposited" by Mr. Dawson and "approved" by Grove. This was not done prior to December 23, and in fact was never done. The one-sided instruction of Wallace could not have transferred the right to any part of the purchase money to the Dawsons, without the consent of Grove, and it did not attempt to do so. Moreover, it did not purport to make any distinction between Mr. and Mrs. Dawson, as to who was to get the money, which is the element most material here.

The monies owing to a debtor, although not yet due, may be subject to garnishment (*Philbrook* v. *Mercantile Trust Co.*, 84 Cal.App. 187 [257 P. 882].) An uncertainty as to the exact amount due will not necessarily prevent a valid levy, provided the defendant's interest is capable of certain and definite ascertainment. (*Van Orden* v. *Anderson*, 122 Cal.App. 132 [9 P.2d 572].) While some contingencies will not defeat an attachment or garnishment, it must definitely appear that a debt or credit actually exists in favor of the defendant, and that the circumstances are such as to enable the defendant's interest to be definitely ascertained.

A garnishee has no liability or obligation, under section 546 of the Code of Civil Procedure, unless he owes a debt to the defendant or possesses or controls property or credits belonging to the defendant at the time the attachment is served. (*Henry* v. *General Forming, Ltd.*, 33 Cal.2d 223 [200 P.2d 785].) An attaching creditor can acquire no greater right in attached property than the defendant had at the time of the levy (*Ward* v. *Waterman*, 85 Cal. 488 [24 P. 930].) A debt which is uncertain and contingent in the sense that it may never become due and payable to the defendant is not subject to garnishment (*Clecak* v. *Dunn*, 95 Cal.App. 537 [272 P. 1104].) Moreover, an escrow holder is the agent of the parties to the escrow and is bound to comply strictly with the escrow instructions. (*Shreeves* v. *Pearson*, 194 Cal. 699 [230 P. 448].)

Mrs. Dawson was not a party to this escrow agreement and had no contractual relationship with the bank. Any claim she had was necessarily based not only upon a supposed assignment to her of her former husband's claim against Grove, but also upon the instructions of the parties to the escrow. Under those instructions the purchase price of the property deposited by Wallace was to go to Grove, or to be used in

clearing up the title to the property. Among the matters to be thus cleared up was the claim of Mrs. Dawson's former husband, the appellant herein. Under the instructions that claim was to be paid only when the proper instruments were surrendered and cancelled, and after the amount of the claim had been approved by Grove. So far as the escrow funds are concerned, nothing was due to either of the Dawsons until these things had been done. From the bank's standpoint, Grove might refuse to approve the payment of any or all of the Dawson claim; or that claim might be settled or discharged in some manner outside of the escrow, in which event all of the money held by the bank would belong to Grove. While the bank was holding $2,000 for someone on December 23, 1946, it could not then be told who owned that money or credit, or to whom it would ultimately go. Not only was the amount that might eventually be found due on the Dawson claim uncertain and incapable of ascertainment by the bank at that time, but it was not then known to whom the money would have to be paid. Both Mr. and Mrs. Dawson were claiming it, and neither of them had furnished the required papers. Up to that time Mrs. Dawson had refused to deposit with the bank the necessary instruments to establish her claim, and had refused to sign the necessary releases covering that claim. Mr. Dawson had threatened litigation, turned the matter over to his lawyers, and had in no way withdrawn his claim, so far as the bank knew. Up to that time, in complying with the escrow instructions, the bank was in no position to recognize the claim of either Mr. or Mrs. Dawson, and no definite obligation on the part of the bank then existed in favor of Mrs. Dawson. There was a contingency both as to the amount of the claim and the party to whom it was to be paid, upon which the owing of any debt and the existence of any liability depended. Under these circumstances, there was no particular liability which was subject to garnishment. (*Department of Water & Power* v. *Inyo Chem. Co.*, 16 Cal.2d 744 [108 P.2d 410].) The evidence supports the findings, and the court did not err in holding as it did.

While the appellant permitted his debtor to later establish her claim to the escrow money, he is in no position to insist that any definite obligation, in that connection, existed in her favor at the time the attachment was levied.

The judgment is affirmed.

Griffin, J., concurred.