[Civ. No. 18648. Second Dist., Div. Three. Mar. 24, 1952.]

SOTERO HERNANDEZ, Respondent, v. REFUGIO HERNANDEZ, Appellant.

Jacque Boyle for Appellant.

A. Moresby White for Respondent.

VICKERS, J. pro tem.—The plaintiff (respondent herein) filed this action to quiet title against his son, the defendant (appellant herein). The defendant filed an answer and cross-complaint. By the answer the defendant denied the allegations of the complaint and alleged as a separate defense that he and the plaintiff were the owners of the property in question as joint tenants and that the possession of the plaintiff and the payment by him of taxes and assessments had been pursuant to the joint tenancy and not under a claim hostile to defendant's rights. By the amendment to his answer the defendant alleged that on or about January 24, 1944, the parties had entered into an agreement to purchase the property in question as joint owners; that pursuant to the agreement the defendant had advanced $1,000 to the plaintiff and that the plaintiff had added an additional $1,000 and had made the down payment upon the property with that $2,000; that the parties had agreed that the payments on the trust deed, given to the seller of the property, would be made from the

rents and profits received from the property and that such payments had been so made; further, that whatever right, title, interest or estate the plaintiff had in the property was held in trust for the defendant to the extent of a one-half interest.

By the first cause of action of his cross-complaint the defendant alleged that the parties were seized in fee as joint tenants of the property, that the plaintiff asserted an estate adverse to the defendant's estate and that the same was without any right whatsoever. By his second cause of action in the cross-complaint the defendant alleged that the plaintiff had collected and received rents from the real estate in question as a joint tenant and that the defendant was entitled to an accounting therefor. By his answer to the cross-complaint the plaintiff denied each and all of the allegations thereof,. pleaded statutes of limitations, alleged that the defendant was estopped from making any claim to the property, and alleged that the alleged right of the defendant as a joint tenant had been obtained by undue influence exercised upon the plaintiff by the defendant or his agent, the defendant's brother, Jose Hernandez.

The trial court made its findings of fact and conclusions of law and signed its judgment in favor of plaintiff and the same were filed and entered. Defendant served and filed his notice of appeal therefrom and also served and filed his notice of motion for a new trial. ▮ At the time of denying the motion for new trial the court ordered the plaintiff to draw up a new judgment to conform to the findings. Thereafter amended findings of fact and conclusions of law and an amended judgment were signed by the trial court and were filed and entered. As stated by the defendant in his opening brief the amended findings contain some matters not in the original findings and the amended judgment and original judgment are essentially the same. It appears to have been done under the power conferred by Code of Civil Procedure, section 662 (see *Estate of Coffin,* 44 Cal.App.2d 178, 180 [112 P.2d 34]). No attack is made by the defendant on the procedure so followed. The effect of the court's action was to eliminate the original findings and judgment. The appeal from that judgment must therefore be dismissed.

By its amended findings the court found that the plaintiff had purchased the property on January 24, 1944, paying $2,000 in cash and executing a $4,000 promissory note and trust deed; that on January 15, 1945, the plaintiff had exe-

cuted a deed of grant purporting to grant the property involved to the plaintiff and the defendant as joint tenants, but that the same was procured from the plaintiff by false and fraudulent representations then made to him by his son, Jose Hernandez, to the effect that said deed was necessary to protect the rights of the plaintiff; that these representations were false and untrue, but were believed and relied upon by the plaintiff; that there was no consideration for the deed and that the same was made without the knowledge or consent of the defendant and the same was never delivered to him, and that in all of these matters said Jose used undue influence upon the plaintiff. The court further found that the plaintiff had been in possession ever since January 24, 1944, had paid all monies due under the note and trust deed as well as all taxes and assessments and that he was the legal owner of said real estate. The court further found that the defendant had never been a joint tenant with the plaintiff in the real estate; that the plaintiff had not paid taxes and assessments on the property in pursuance of a joint tenancy with the defendant, and that the defendant had never made any claim upon the plaintiff, as to the property, until the filing of this action. The court further found that it was not true that the parties had entered into an agreement to purchase the property as joint owners or that the defendant had given the plaintiff $1,000 to pay on the purchase price or that the parties had agreed that the payments under the trust deed would be made from the rents and profits.

By its amended judgment the court declared the plaintiff to be the legal owner of the property; that the joint tenancy deed was a cloud upon his title; that the same should be set aside and cancelled; and that the title of the plaintiff was forever quieted against all claims, etc. of the defendant. The defendant appeals ". . . from the whole of said judgment . . . from the Court's denial of defendant's motion for a new trial, and from all the orders and rulings of the trial court in the above entitled action."

It appears from the reporter's transcript that while 17 and 18 years old the defendant was gainfully employed and earned from $31 to $44 a week; that he retained $10 per week of these earnings and deposited the rest with his mother. During this period defendant was living with his mother and the plaintiff and did not pay any board or room rent except such as may have been deducted by the mother from his earn-

ings. He testified that he thereafter entered the armed forces and at that time that his mother held $800 of his money, which he was going to use to buy an automobile upon his return from the service. On January 24, 1944, while the defendant was overseas the plaintiff entered into and consummated negotiations to purchase the property in question from one Rose Segale for $6,000, making a down payment of $2,000 and executing a note and trust deed for $4,000. For some unexplained reason the deed executed by Mrs. Segale named David and Catherine Hernandez as the grantees. There is no evidence that they advanced any portion of the consideration and neither of them testified in this action. Mrs. Segale testified that the only person she dealt with in regard to the property, from the time of its purchase by the plaintiff to the date of the final payment, was the plaintiff. During the spring of 1944 defendant's mother died. On November 14, 1944, David and Catherine Hernandez deeded the property to the plaintiff.

On January 15, 1945, the plaintiff executed a joint tenancy deed of the property in favor of himself and the defendant. The plaintiff, who could neither talk, understand nor read English, said he signed this document not knowing what it was solely because his son Jose told him to do so. Jose testified that he took his father to the bank at the time the joint tenancy deed was executed; that it was done "Because we had some money invested in this property and I told my father, explained to him that he should be protected, and he agreed, and [interruption]. . . ." He also testified that it was to protect the defendant's interest. However, both he and the defendant testified that they had no communication with one another in regard to the matter until after defendant's discharge from the army and that defendant had never authorized Jose to represent him. Plaintiff testified that the $2,000 down payment on the property was the product of his earnings and savings; that all of the subsequent payments were made by him from his own funds and that the defendant on no occasion gave him any money; further that the defendant made no claim to having an interest in the property until shortly before the complaint was filed. The defendant admitted that he had had no conversations nor agreement with the plaintiff, about January, 1944, or any other time, for the purchase of the property by them jointly as alleged in his verified amendment to the answer.

■ Defendant contends that the amended judgment is not supported by the findings in that the latter do not find the necessary facts to establish title to the property in plaintiff by adverse possession. Defendant misconceives the theory under which plaintiff prosecuted his action to quiet title. It is apparent from the record that plaintiff's title was not based upon adverse possession but was derived from his purchase of the property, the deed thereto from Mrs. Segale to David and Catherine Hernandez in January, 1944, and the deed from the latter to plaintiff in November, 1944.

■ Defendant also contends that the evidence does not support the findings. In addition to the evidence recited above there was considerable testimony received which cast doubt upon the defendant's claim that his mother held $800 or any large sum belonging to him. There was also additional testimony which reflected upon the credibility of both the defendant and his principal witness Jose Hernandez. In any event there was substantial evidence to support the findings and we are therefore bound thereby. In this connection the defendant urges that it was not established that the property referred to during the trial as 653 Moulton Street, was the same property legally described in the complaint. It is apparent from a reading of the reporter's transcript that this was a fact conceded by all parties. Any lack of such proof as may have existed at the time of the denial of the motion for nonsuit was thereafter cured by the implied admission of the defendant.

Defendant also contends that the court was without authority to order a cancellation of the joint tenancy deed of January, 1945, because there was no reference thereto in the body of the complaint nor a prayer for such cancellation. The existence of this deed was first established during the trial and by the defendant. While he alleged by his answer and cross-complaint that the parties were joint tenants he did not plead the existence of the deed. Both parties by their respective pleadings sought equitable relief of quiet title from the court. ■ ". . . a court of equity, having once acquired jurisdiction, will adjust all the differences between the parties arising from the cause of action in order to do complete justice and prevent further litigation, whether or not the particular relief was requested." (*Sears* v. *Rule,* 27 Cal.2d 131, 149 [163 P.2d 443].) It was the duty of the court to determine, insofar as it was able, the respective rights of the

parties to the property, from the evidence received. ■ The defendant having raised the issue of the effect of the deed cannot complain that the plaintiff by the evidence introduced made such defenses thereto as were available to him. ■ Neither can he ". . . permit an issue to be litigated and on appeal escape the consequences by claiming that such issue was not pleaded." (*Vaughn* v. *Jonas,* 31 Cal.2d 586, 605 [191 P.2d 432].) The court could not determine the respective rights of the parties in the property without determining the effect and validity of the deed. ■ Having found that the deed was procured from the plaintiff by fraud and undue influence and that there was no consideration therefor from the defendant, the court properly ordered its cancellation. ■ The prayer of the complaint was sufficient for this purpose since it prayed that the defendant be required to set forth the nature of his claim; that the court determine the same and declare that the defendant had no estate or interest in the property; that the defendant be enjoined and debarred from asserting any claim thereto; "And for such further relief as to the Court may seem fit." (See *Angus* v. *Craven,* 132 Cal. 691, 697, 698 [64 P. 1091].) The defendant does not claim that he was taken by surprise or did not have an opportunity to offer all evidence available to him in regard to the effect and validity of the joint deed.

The defendant further contends that the court erred in receiving in evidence over objection an unexecuted compromise agreement and in permitting counsel for plaintiff to question the defendant and his witness Jose Hernandez in relation to it. ■ Offers of compromise are inadmissible in evidence (*Dennis* v. *Belt,* 30 Cal. 247; *H. D. Taylor Co.* v. *J. H. Jonas & Sons,* 118 Cal.App. 208, 211 [4 P.2d 797]), and the rule excludes all negotiations in relation thereto (*Boyes* v. *Evans,* 14 Cal.App.2d 472, 479 [58 P.2d 922]). The trial court therefore committed error in receiving this evidence. ■ However we do not believe under the circumstances here involved that the evidence received by reason of the error could reasonably have affected the result of the action. The error was of such slight importance as not to alone justify a reversal of the judgment. (See *Earle* v. *DeBesa,* 109 Cal. App. 619, 621, 622 [293 P. 885].) Before the evidence was received the court stated it was ". . . only to show the credibility of the witness." The unexecuted agreement provided for the payment of $1,000 by the plaintiff to the defendant. The letter of transmittal from defendant's attorney to plain-

tiff's attorney did not indicate who initiated the negotiations and stated: "I believe it represents the agreement discussed by the parties." The defendant testified he made the offer to his father. Thereupon he and plaintiff's counsel engaged in an argumentative discussion as to whether or not Jose Hernandez had made such an offer in the office of plaintiff's counsel. At the conclusion of this discussion the court said: "That is as far as you need to go on that. This is just to test his credibility, that's all." Later plaintiff's counsel questioned the witness Jose Hernandez in regard to the proposed compromise. Defendant made no objection to these questions and did not move to strike the answers. The gist of the answers given by Jose was that he and the defendant went to the office of plaintiff's counsel at the latter's request, that neither defendant or Jose suggested the compromise and that it was plaintiff's counsel who made the suggestion. Plaintiff's counsel closed this portion of the examination by saying: "All right. If you say I did it, all right." From an examination of the entire cause, including the evidence, we are of the opinion that the error did not result in a miscarriage of justice. Therefore the judgment should not be set aside. (Cal. Const., art. VI, § 4½.)

The appeal from the original judgment is dismissed. The order denying the motion for new trial and the other "orders and rulings" referred to in the notice of appeal are not appealable. The appeals therefrom are therefore dismissed. The amended judgment is affirmed.

Wood (Parker), Acting P. J., and Vallée, J., concurred.

A petition for a rehearing was denied April 9, 1952, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1952.