[Civ. No. 24297. Second Dist., Div. Two. Nov. 3, 1960.]

H. W. BRUNSKILL, Plaintiff, v. JACK STUTMAN, as Trustee in Bankruptcy, etc., et al., Appellants; RUTH HELENA ROGET, as Executrix, etc., Defendant and Respondent; WILLIAM HUNTER HUTCHISON et al., Cross-Defendants and Respondents.

Gendel & Raskoff and H. Miles Raskoff for Appellants.

J. E. Simpson for Defendant and Respondent.

Wright, Wright, Goldwater & Wright and A. F. Mack, Jr., for Cross-Defendants and Respondents.

ASHBURN, J.—This appeal grows out of an interpleader action which involves a controversy as to prior right to certain money owing from H. W. Brunskill, doing business as

Wilmington Welding and Boiler Works, to Gregory Electric Company, a corporation. The claimants are appellant Stutman, acting as trustee in bankruptcy of Gregory Electric Company, on the one hand, and two attaching creditors (respondents) on the other, viz., (1) Ruth Helena Roget, as executrix of the last will of George Edward Roget, deceased, who during his lifetime did business under the name Harbor Sandblasting Company, and (2) a partnership known as California Ship Service Company, consisting of three persons named Hutchison. California Ship Service Company and Roget are creditors of Gregory Electric Company and they levied garnishments upon the funds owing from Brunskill to Gregory on February 23, 1955, and March 15, 1955, respectively, more than four months before filing of involuntary petition in bankruptcy against Gregory, which filing was made on August 23, 1955, and was followed by adjudication of bankruptcy on September 9, 1955.

The controlling question is whether Brunskill at the times of levy of garnishments owed to Gregory a debt sufficiently definite and certain in nature to be susceptible to garnishment.

Pursuant to request of the United States Navy for bids for the work of repairing, altering and decommissioning of the U.S.S. Sabine, Brunskill submitted a successful bid covering 85 articles of the Navy's specifications, a total bid price of $386,392. Brunskill was the holder of a master contract, possession of which was a prerequisite to bidding upon such work. Gregory had no such master contract and hence could not bid directly. Relationship between the two was close enough to produce the successful bidding by Brunskill with an immediate subcontracting of all the work to Gregory upon the same terms and conditions as those imposed upon Brunskill by the Navy's job order issued to him on August 23, 1954, which order incorporated by reference all the terms and provisions of the master contract. That job order provided that the vessel would be available to the contractor from September 7, 1954, to October 29, 1954, and also contained a liquidated damage clause in the sum of $740.64 per day (later reduced to $359.26 per day) for any delays in completion beyond the specified time. Gregory took charge of the job and ultimately completed the work. As it progressed, additional work was required from time to time and was covered by amendments to the original job order. The third

one extended the completion date to January 28, 1955; a fourth amendment increased the total price to $593,367.[1]

The contract provided for making progress payments from time to time: ''In making such progress payments, there shall be retained ten percent of the amount estimated or approved by the Contracting Officer pursuant to Paragraph (a) above until final completion and acceptance of all the work covered by the Job Order provided, however, that the Contracting Officer at any time after fifty percent of the work has been completed, if he finds that satisfactory progress is being made, may authorize the making of the additional progress payments in full.''

Counsel for both sides agree that the controlling question is whether on the dates of the respective levies of garnishment there existed a debt owing from Brunskill to Gregory of such a nature as to be subject to that process.

The pertinent factual findings of the trial court upon this issue are as follows. ''Between September 1, 1954 and February 23, 1955, the total value of all work performed by GREGORY directly or through subcontractors on the USS SABINE was the sum of $577,231.00 and there had been paid thereon in cash and by way of credit by Brunskill to GREGORY the sum of $494,400.00, leaving a balance due from Brunskill to GREGORY of $82,831.00.'' It was also found that the work which Brunskill and Gregory had respectively agreed to perform upon the vessel ''was completely performed on February 23, 1955, except for a small amount of re-work which was necessary to be re-done to satisfy NAVY.'' Also that upon the dates of garnishments Brunskill ''was indebted to Gregory Electric Company, and there was due and owing by said Brunskill to said Gregory Electric Company which said Brunskill was obligated and liable to pay to said GREGORY on said dates an undetermined amount of money for work performed by GREGORY on the USS SABINE. Said debt was absolute and certain but the amount thereof had not then been determined . . . .[2] The liability of Brunskill to pay

---

[1]This fourth amendment was later cancelled and a second ''Amendment #4'' subsequently executed and forwarded to Brunskill under date of August 23, 1955. This amendment bears the same date as the first amendment number 4, namely, January 15, 1955, adjusts the total price of all work under the said Job Order to $577,231, and extends the completion date to February 14, 1955. It also changes the amount of liquidated damages per day to $359.26.

[2]We have omitted from this quotation the single factual phrase which appellant asserts to be unsupported by any evidence, viz., ''by reason of the failure of Gregory to submit invoices to Brunskill therefor.'' Re-

said debt was not contingent and the amount of the liability was capable of definite ascertainment. The amount of the said indebtedness due and owing by the said Brunskill to the said GREGORY on the dates that said garnishments were levied was subsequently determined to be the sum of $82,831.00. . . . That a dispute existed between NAVY and Brunskill as to the date when the work on the said USS SABINE should have been completed. NAVY was contending that the said work could and should have been completed by February 11, 1955, and that since it was not completed until February 23, 1955, Brunskill was liable to NAVY for liquidated damages in the approximate amount of $364.00 per day for twelve (12) days, or a total of $4,380.00. Brunskill and GREGORY were contending that the said work on the USS SABINE could not have been completed before February 16, 1955, and that liquidated damages for delay should not be assessed for more than seven (7) days at $364.00 per day, or a total of $2,548.00.'' On or about August 23, 1955, Brunskill submitted to the Navy his final billing in the sum of $119,597.66, which sum ''included the sum of $82,831.00 due and owing from Brunskill to GREGORY for work completed on the USS SABINE as of February 23, 1955. . . . On February 24, 1955, the date that the NAVY took possession of the USS SABINE, all work which GREGORY had agreed to perform upon the said vessel had been performed by it and no new or additional work was performed on the USS SABINE thereafter. The only work which was performed on the USS SABINE by GREGORY after February 23, 1955, was re-work which was necessary to satisfy the NAVY. The liability of Brunskill to pay GREGORY on February 23 and March 15, 1955, the dates that the garnishments were levied, was absolute and certain and not contingent.''

It appears that Brunskill submitted to the Navy his progress invoice Number 8 under date of January 21, 1955, for the sum of $80,000, the same was approved and paid to Brunskill on January 24, 1955, without a 10 per cent retention. Total retentions then amounted to $41,600. The Navy's contracting officer then estimated that 80 per cent of the total work of $568,000 had been completed. On January 17, 1955, Gregory submitted to Brunskill a progress billing Number 9 for $40,000; Brunskill in turn billed the Navy for

spondents assert that the evidence amply sustains this finding. We consider the matter to be inconsequential in the determination of this appeal.

that amount; Lieutenant Morrison, the contracting officer who had authority in the premises, approved it for payment and forwarded it to the Regional Accounts Office on February 28, 1955, with the statement that "percentage of completion to date" was 90 per cent. By that time a dispute had arisen concerning delay and the unsatisfactory way in which some of the work was being completed by Gregory. The completion date of January 28, 1955, had passed and the question of liquidated damages had arisen. Under date of February 26, 1955, the Navy furnished the contractor a discrepancy report (Exhibit C herein) listing items which had not been completed to its satisfaction. It was stipulated at the trial that the job was not complete under the master contract on February 23, 1955, and that "re-work" was required as set forth in the discrepancy report. Uncontradicted evidence shows that Gregory and its subcontractors performed such work on the vessel during March and April, 1955, but the extent and value of same is not disclosed except as same appear in the enigmatic terms of the discrepancy report. The Navy had taken possession of the vessel on February 24, 1955, and towed it to the Navy shipyard, but Gregory was permitted to continue work until the "re-work" was done and the job finally acceptable to the Navy. So far as is ascertainable from the record this work was not substantial in amount and was to be done at Gregory's expense. No breach of contract was ever claimed and the Navy merely asserted a right to offset liquidated damages in the amount of $4,380, while Brunskill and Gregory conceded and contended for a sum not in excess of $2,548.

After various conferences a meeting was held on July 13, 1955, between representatives of the Navy, Mr. Brunskill and representatives of Gregory Electric Company, at which time it was agreed that the required completion date was February 14, 1955, and liquidated damages would be assessed from February 15 to February 23, 1955, inclusive. Then came the billing by Brunskill for $119,597.66, which included $82,831 due and owing from Brunskill to Gregory for the work completed as of February 23, 1955. The $119,597.66 was paid by Navy to Brunskill on August 29, 1955.

Brunskill made returns to the attachments on March 8, 1955, and March 25, 1955, saying he was indebted to Gregory Electric Company "in the sum of $ . . . undetermined." Examined as garnishee in late March, 1955, Brunskill testified that he had so phrased his return "for two reasons: One,

was this invoice that we have discussed on the Sabine—he didn't know whether Gregory would agree to these Navy figures or whether they would be negotiated or some different arrangement arrived at, so he couldn't accurately state what amount was owned from that invoice. He also stated that he had not at that time—or at least since the last payment received by the Navy, as I recall—been billed by Gregory for what they had coming. So he was unable to state any determined amount in his return.''

In his first amended complaint in interpleader Brunskill alleged: ''That this plaintiff owes to the defendant, Gregory Electric Company, the sum of $71,384.84, after deduction of $1,000.00 for expenses in connection with the preservation of the fund.'' At the trial counsel stipulated that the sum due and owing from Brunskill to Gregory was $72,384.84, subject to such deductions for attorneys' fees, accountants' fees, etc., as the court might allow.

Brunskill, as plaintiff in interpleader, paid into court the sum of $67,912.44 (the net balance due Gregory after deducting certain allowances made to Brunskill by the court); pursuant to stipulation Brunskill was discharged from liability to either party and the court concluded and adjudged that the garnishments were valid liens and that the clerk pay to the Hutchisons (California Ship Service Company) the full amount of their lien of $22,755.41, and to Roget as executrix the remaining sum of $45,157.03 to apply upon her lien of $49,695.45. This resulted in a judgment that Stutman as trustee in bankruptcy had no claim upon the fund and shall receive no part of same. Hence his appeal.

We approach the legal problems herein presented with recognition of the binding rules which have been stated by the Supreme Court. ▪▪▪ Where appellant urges insufficiency of the evidence to sustain the findings the rule is that, ''Such contention *requires defendants to demonstrate* that there is no substantial evidence to support the challenged findings.'' (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550].) (Emphasis added.) ▪▪▪ It is said in *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183], that: ''It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached

by the jury. ▓ When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.''

Appellant has not complied with these rules. His main argument is entitled, ''There Was No Debt to Gregory Electric Co. Subject to Garnishment Upon H. W. Brunskill, dba Wilmington Welding & Boiler Works on February 23, 1955 or March 15, 1955,'' and consists of a discussion of facts and law which is an indirect attack upon the factual findings above quoted and is not an attempt to demonstrate that there is no substantial evidence to support the findings thus indirectly challenged. However, those findings are a blending of facts and conclusions to such an extent that they deserve a careful testing upon the law as applied to the proven facts.

▓ While a ''debt which is uncertain and contingent in the sense that it may never become due and payable, is not subject to garnishment'' (*Clecak* v. *Dunn*, 95 Cal.App. 537, 540 [272 P. 1104] ; *Dawson* v. *Bank of America*, 100 Cal.App. 2d 305, 309 [223 P.2d 280] ), it is now established in this state that a present right of action upon the obligation is not essential to a valid garnishment and that earlier statements or intimations to the contrary, as in *Early* v. *Town of Redwood City*, 57 Cal. 193, no longer square with the prevailing doctrine. (*Brainard* v. *Rogers*, 74 Cal.App. 247, 253 [239 P. 1095] ; *Philbrook* v. *Mercantile Trust Co.*, 84 Cal.App. 187, 196 [257 P. 882].)

▓ Mere uncertainty in the amount of the debt at the time of levy does not defeat the garnishment if the amount of the obligation is susceptible of measurement by facts then known, or by subsequent events. (*Brainard* v. *Rogers, supra,* 74 Cal.App. 247, 253 [239 P. 1095] ; *Dawson* v. *Bank of America, supra,* 100 Cal.App.2d 305, 309 [223 P.2d 280].) It is to be noted that the only uncertainty at the time of the levies with which this case is concerned was as to the amount, an uncertainty which was resolved by the agreement of July 13, 1955, upon the liquidated damages. ▓ ''It is the *fact* of liquidation of the uncertain claim, and not the *manner* of liquidation which is the decisive factor in determining whether the liability is subject to garnishment. The case of *Brainard* v. *Rogers,* 74 Cal.App. 247 [239 P. 1095], is particularly pertinent here. In that case the question of whether or not the proceeds of a fire insurance policy were subject to garnishment at the instance of the creditor of the insured subsequent

to a fire loss but prior to an adjustment of that loss between the insurer and the insured was decided in the affirmative. The court declared the rule to be that where *liability* already exists and the policy furnishes the required standard by which the *amount* of the liability can be ascertained and fixed, then such liability is a debt 'owing' to the insured within the meaning of the attachment sections of the Code of Civil Procedure (i.e., §§ 542-545).'' (*Department of Water & Power* v. *Inyo Chem. Co.*, 16 Cal.2d 744, 751 [108 P.2d 410].)

Also pertinent here is the following passage from *Van Orden* v. *Anderson*, 122 Cal.App. 132, 142 [9 P.2d 572]: "Nor will a contingency as to the amount prevent a valid levy provided the defendant's interest is capable of certain and definite ascertainment (28 C. J., Garnishment, § 133, p. 103), nor that the amount of the surplus requires the adjustment of a claim for compensation by the trustee." 38 Corpus Juris Secundum, section 87, page 293: "*Contingency as to amount.* Where there is no contingency as to the garnishee's liability, the only contingency being as to the amount thereof, and where the amount of the liability is capable of definite ascertainment in the future, there is no such contingency as prevents garnishment of the claim, even though, it has been held, it may be that eventually it will be found that nothing is due." To the same effect see *McKendall* v. *Patullo*, 52 R.I. 258 [160 A. 202, 204, 82 A.L.R. 1111]: *Dwinel* v. *Stone*, 30 Me. 384, 388-389; *Balaban* v. *Willett*, 305 Ill.App. 388 [27 N.E.2d 612, 616]; 4 Am.Jur. § 198, p. 681.

 Denial of liability or assertion of a counterclaim for faulty performance (*McKendall* v. *Patullo, supra,* p. 204; *Knudson* v. *Anderson*, 199 Minn. 479 [272 N.W. 376, 379-380]), or the pendency of an arbitration of a controversy over the amount due will not render the garnisheed obligation so uncertain or contingent as to be impervious to attachment (see *Ransom* v. *Bidwell*, 89 Conn. 137 [93 A. 134, 135-136]). 38 Corpus Juris Secundum section 87, page 292: "So the possibility that a future state of things may arise before the day of payment which will create a defense against the recovery of the debt, which circumstances, however, may never arise, does not render the debt contingent." Accord: *Goodman* v. *Meriden Britannia Co.*, 50 Conn. 139, 149-150; *Calechman* v. *Great Atlantic & Pacific Tea Co.*, 120 Conn. 265 [180 A. 450, 452, 100 A.L.R. 302]; *Ottumwa Nat. Bank* v. *Norfolk*, 185 Iowa 1334 [172 N.W. 3, 6]. In the instant case

the government was claiming liquidated damages of $4,380, while Brunskill and Gregory were contending that the amount should be not more than $2,548. Manifestly, the resolution of this dispute could not affect the fact that a large sum of money was owing from the Navy to Brunskill and from Brunskill to Gregory.

Substantial performance of a construction contract is enough to render the debt subject to garnishment. (4 Am. Jur. § 201, p. 683; see also anno. in 82 A.L.R. 1115, 1120-1121.) Pertinent here is the following language of *McKendall* v. *Patullo, supra,* 52 R.I. 258 [160 A. 202, 204, 82 A.L.R. 1111]: "It is true that there were substantial deviations from the contract, but she [the garnishee] entered into possession of the houses and was apparently satisfied to accept them as they were and seek compensation from the defendant for his failure to fully perform his contract out of the funds in her hands.

"It was highly improbable that the amount retained, as the event proved, was less than any legitimate claim for recoupment the garnishee might have, and it was practically impossible that it would exactly equal the allowance subsequently made for deviations from that contract. It was therefore reasonably certain that she had in her hands personal estate belonging to the defendant.

"The purpose of the garnishment statute is to render liable, for the payment of debts, property that cannot be reached by the direct process of attachment. We see no valid reason why this purpose should be defeated because the amount due the principal defendant is made uncertain by a claim to a part of the fund by the garnishee."

The instant record warrants the inference that, although the contractor at the time of the first garnishment on February 23, 1955, had not fully completed his contract, he had made substantial performance. The Navy took possession of the vessel on February 24 and did not declare a default but permitted Gregory to finish the job to the satisfaction of the Navy. No claim was made against the contractor except one for liquidated damages for delay in the sum of $4,380, which claim was finally adjusted at $3,233.34. At the same time, July 13, 1955, the date of actual completion was fixed at February 23, 1955. This was done by mutual agreement of the Navy, Brunskill and Gregory, more than a month before filing of petition in bankruptcy and hence more than a month before Stutman as trustee in bankruptcy acquired the right to speak for Gregory. Gregory's admission made in July was

binding upon it and upon its successor in interest, the trustee. (*Cf. Cobb* v. *McDonald-Weist Logging Co.* (9 C.C.A.), 278 F. 165, 167; 6 Am.Jur. § 871, p. 1068.) Navy, Brunskill and Gregory having agreed that the job was finished on February 23, 1955, no one else was or is in position to claim the contrary. The attaching creditors stand upon February 23 as the correct date and Gregory's trustee in bankruptcy, elected some time after the adjudication of September 9, 1955, has no standing to take a different position. (*Cf.* 8 C.J.S. § 257, p. 919.) The court's finding of completion on February 23, 1955, thus proves to be well founded. That being true there was on the day of garnishment a debt owing from Brunskill to Gregory which was certain in all respects except the amount which was subsequently fixed and paid into the interpleader action.

This is not a case presenting the question of attachability of an unmatured progress payment under a building contract (see anno. in 134 A.L.R. 853, 865), for the evidence and findings establish that the contract had been fully performed and hence all progress payments and the final balance had become due and payable before the garnishments, subject only to approval of the billings by the Navy's representative. For this reason (among others) the instant case is clearly distinguishable from *Early* v. *Town of Redwood City, supra,* 57 Cal. 193, upon which appellant heavily relies. (See discussion of the Early case in 11 So. Cal.L.Rev. at p. 229.)

The pertinent cases, when applied to the facts found by the trial judge, sustain his conclusion that the debt at bar was free from any contingencies which would render it non-attachable.

Appellant also argues error in the admission of evidence of other statements made by Brunskill and declarations made by Commander R. W. Davis of the Navy, all of which had a tendency to show the existence of an enforceable obligation at the time of garnishment. The point warrants no discussion because the other evidence and the law adequately support the trial court's findings of fact and conclusions of law regardless of the last-mentioned evidence. In these circumstances error, if any there were, in the admission of said evidence could not work a miscarriage of justice. (*Kalfus* v. *Fraze,* 136 Cal.App.2d 415, 423 [288 P.2d 967]; *Inouye* v. *McCall,* 35 Cal.App.2d 634, 636-637 [96 P.2d 386]; *Hernandez* v. *Hernandez,* 109 Cal.App.2d 903, 910 [242 P.2d 59]; *Spoerer*

v. *Baker*, 116 Cal.App.2d 664, 669-670 [254 P.2d 113]; 3 Witkin, California Procedure, § 103, p. 2275.)
The judgment is affirmed.

Fox, P. J., and Nourse, J. pro tem.,* concurred.

A petition for a rehearing was denied November 29, 1960, and appellant Jack Stutman's petition for a hearing by the Supreme Court was denied December 28, 1960. Traynor, J., was of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.